**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
Daniel Bravo
Nevada Bar No. 13078
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
dbravo@wrslawyers.com

*Attorneys for Plaintiffs*
*(Additional counsel appear on signature page)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| QUINTON DRUMMER, STEFFAN WEBB, and DEMONTRAY STALLWORTH, individually, and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>vs.<br><br>ALPHA TEAM CONSTRUCTION CORPORATION, BG CONSTRUCTION SERVICES, LLC., HECTOR BELTRAN, and Does 1-10, jointly and severally, as<br><br>          Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND** |

        Plaintiffs, Quinton Drummer, Steffan Webb, and Demontray Stallworth, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendants, Alpha Team Construction Corporation, BG Construction Services, LLC, Hector Beltran, and Does 1-10, and state as follows:

### INTRODUCTION

        1.        This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, Quinton Drummer, Steffan Webb, and Quinton Drummer

(hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendants, Alpha Team Construction Corporation, BG Construction Services, LLC., Hector Beltran, and Does 1-10 (hereinafter referred to collectively as "Defendants"), arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, article XV, section 16 of the Nevada Constitution (the "Minimum Wage Amendment"), Nev. Rev. Stat. (hereinafter "N.R.S.") §§ 608.016 and 608.018, and common law.

2.    Plaintiffs were jointly employed by Defendants as general laborers ("Laborers").

3.    Defendants failed to pay Plaintiffs and all similarly situated employees for all hours worked, including, but not limited to, overtime hours.

## JURISDICTION AND VENUE

4.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, et seq.

5.    Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

6.    Defendants' annual sales each exceed $500,000.00 and they have more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendants' Laborers engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

7.    This Court has jurisdiction over Plaintiffs' state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000.00 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and Defendants are citizens of different states.

8.      A private party may also bring an action for damages for violations of the Minimum Wage Amendment and N.R.S. §§ 608.016 and 608.018. Plaintiffs' state claims originate from the same facts that form the basis of their federal claims. The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

9.      This Court has personal jurisdiction over Defendants because they do business within the state of Nevada and, upon information and belief, are registered with the Nevada Department of the Secretary of State.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants employ Laborers in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## **PARTIES**

11.     Plaintiff Quinton Drummer is a resident of Las Vegas, Nevada, and was employed by Defendants as an hourly Laborer from March 22, 2018 to April 17, 2018.  Plaintiff Drummer signed a consent form to join this lawsuit, which is attached as ***Exhibit A***.

12.     Plaintiff Steffan Webb is a resident of Las Vegas, Nevada, and was employed by Defendant as an hourly Laborer from August 2017 to date. Plaintiff Webb signed a consent form to join this lawsuit, which is attached as ***Exhibit B***.

13.     Plaintiff Demontray Stallworth is a resident of Las Vegas, Nevada, and was employed by Defendant as an hourly Laborer from March 22, 2018 to April 9, 2018. Plaintiff Stallworth signed a consent form to join this lawsuit, which is attached as ***Exhibit C***.

14.     Defendants operate and have operated, in Nevada and other locations across the country, construction operations where Laborers are employed to undertake construction projects, (such as building and installing commercial shelving) for Defendants' clientele.

15.     Defendant Alpha Team Construction Corporation (hereinafter "ATCC") is a Georgia Professional Corporation, with a registered office address of 2202 Jasmine Parkway, Alpharetta, GA, 30022.

16.     According to ATCC's website, they provide their clients with contract labor. Additionally, ATCC's website indicates they are headquarter at 304 S. Jones Blvd #251, Las Vegas, NV, 89107.  *See* https://www.alphateamconstructionco.com/ (last visited on 6/11/18).

17.     Defendant BG Construction Services, LLC (hereinafter "BG") is a Georgia Limited Liability Corporation, with a registered office address of 9775 Hightower Road, Roswell, GA, 30075.

18.     Defendant BG Construction Services, LLC (hereinafter "BGCS") provides commercial construction services and utilizes Laborers supplied by ATCC to perform the manual labor on the contracts secured by BGCS.

19.     Defendant Hector Beltran (hereinafter "Beltran"), at all relevant times, was the controlling member of BGCS and also serves as their registered agent, with an address of 9755 Hightower Road, Roswell, GA, 30075.

20.     Additionally, Defendant Beltran ran the day to day operations of BGCS and, at times, supervised the services performed by Plaintiffs.

## **GENERAL ALLEGATIONS**

21.     Defendant ATCC required Plaintiffs and the putative class members to sign an "Employment Contract" at the onset of their employment with ATCC.  *See **Exhibit D***, a true and correct copy of Defendant ATCC "Employment Contract".

22.     The Employment Contract states that "[t]he Employee agrees that s/he will at all times faithfully, industriously, and to the best of his/her skills, experience and talents, perform all the duties required of his position.  In carrying out these duties and responsibilities, the Employee shall comply with all Employer policies, procedures, rules and regulations, both written and oral, as are announced by the Employer from time to time."  ***Exhibit D***, ¶ 1.

23.     "As full compensation for all services provided, the employee shall be paid at the rate of ten/10 dollars per hour and will be subject to be paid bi-weekly."  ***Exhibit D***, ¶ 3.

24.     The ATCC Employment Contract goes on to state "Labor is hired as contractors and not employees. Contractors are subject to 1099 employment and are responsible for their own taxes and deductions." *Exhibit D*, ¶ 3.

25.     As more fully described below, Plaintiffs and the putative class members were misclassified as independent contractors by Defendants.

26.     Plaintiff Webb has the most experience of the three Named Plaintiffs, and has worked for Defendants on multiple jobs, in multiple states, including in Nevada and Idaho.

27.     As Laborers for Defendants, Plaintiffs have no specialized skills or training and are generally tasked with installing shelves or racks in commercial retail stores.

28.     For example, from March 2018 to June 2018, Plaintiffs were assigned by Defendants to assemble and install racks in an industrial freezer, inside a warehouse, in Twin Falls, Idaho.

29.     Plaintiffs Drummer and Stallworth had no prior knowledge or experience in assembling or installing racks.

30.     Since none of Defendants' Laborers resided in Twin Falls, Idaho, Defendants paid for the Laborers' lodging (a hotel) and promised them a weekly meal allowance of $120.00 per week.  However, by the beginning of April 2018, Defendants' had stopped paying the meal allowance.

31.     Defendant ATCC promised to pay Plaintiffs and the putative class members their wages by way of a third-party mobile application called "Square Ca$h" on a bi-weekly basis. *See Exhibit D*, ¶ 3; *see also, Exhibit E*, a true and correct copy "Square Ca$h" Authorization Agreement.

32.     In 2017, Defendants utilized a smart phone application for timekeeping, called "SquareUp Payroll." In early 2018, Defendants switched to a manual, handwritten method of timekeeping to track Plaintiffs' and the putative class member's hours.  However, on March 29, 2018, Defendants returned to a smart phone application called "TimeClock Wizard" to track the time spent working by Plaintiffs and the putative class members.

**Exemplary Pay Periods**

33.    Plaintiff Drummer's handwritten Timesheet from March 22, 2018 to March 29, 2018 illustrates he worked the following hours during that time period:

| Week Day | Date | Time In | Time Out | Lunch |
|---|---|---|---|---|
| Thursday | 03/22/18 | 7:30AM | 5:10PM | -1 |
| Friday | 03/23/18 | 6:00AM | 5:00PM | -1 |
| Saturday | 03/24/18 | 6:00AM | 3:30PM | -1 |
| Monday | 03/26/18 | 6:00AM | 5:00PM | -1 |
| Tuesday | 03/27/18 | 6:00AM | 5:00PM | -1 |
| Wednesday | 03/28/18 | 6:00AM | 5:00PM | -1 |
| Thursday | 03/29/18 | 6:00AM | 5:00PM | -1 |
| TOTAL | Excluding lunches, Plaintiff Drummer worked 67.17 hours. | | | |

34.    Plaintiff Drummer's electronic Timesheet from to April 5, 2018 to April 12, 2018 illustrates he worked the following hours during that time period:

| Week Day | Date | Time In | Time Out | Lunch[1] |
|---|---|---|---|---|
| Thursday | 04/05/18 | 5:09AM | 4:29PM | -1 |
| Friday | 04/06/18 | 6:00AM | 5:00PM | -1 |
| Saturday | 04/07/18 | 6:00AM | 3:30PM | -1 |
| Monday | 04/09/18 | 6:15AM | 5:00PM | -1 |
| Tuesday | 04/10/18 | 6:00AM | 5:00PM | -1 |
| Wednesday | 04/11/18 | 6:00AM | 5:00PM | -1 |
| Thursday | 04/12/18 | 6:00AM | 5:00PM | -1 |
| TOTAL | Excluding lunches, Plaintiff Drummer worked 68.58 hours. | | | |

35.    The long hours depicted in the exemplary timekeeping records were a regular occurrence for Plaintiffs and the putative class members.  However, Defendants did not pay their Laborers any overtime or provide them with rest breaks.

---

[1]    Defendants' electronic timekeeping system automatically deducted one hour per day for lunch, regardless of whether a full hour was taken.

36.    Defendants also failed to provide Laborers with paystubs that accurately reflected the number of hours worked by each Laborer, and instead just transferred them cash via the "Square Ca$h" phone application.

**Failure to Pay Wages**

37.    By early April, not only had Defendants ceased providing Plaintiffs and the other Laborers on the Twin Falls project their $120.00 per week meal stipend, Defendants also ceased paying hourly wages to Plaintiffs and the other Laborers altogether.

38.    Despite Defendants' complete failure to compensate Plaintiffs and the other Laborers for the work they performed, Defendants continued to permit them to work, and in fact insisted that they continue to perform their jobs.

39.    To date, Defendants have still failed to compensate Plaintiffs and the other Laborers for all hours worked for Defendants.

40.    Defendants employ hundreds of Laborers, and knew or should have known that Plaintiffs and other Laborers were employees (not independent contractors) and entitled to overtime and minimum wages under the FLSA, the Minimum Wage Amendment, and N.R.S. §§ 608.016 and 608.018.

## MISCLASSIFICATION ALLEGATIONS

41.    Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).

42.    The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979).

43.    Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3, 65 S. Ct. 295 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan*

*Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 n. 21, 105 S. Ct. 1953 (1985) (same).

44.   The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 33, 81 S. Ct. 933 (1961).

45.   The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983).  The ultimate determination must be based "upon the circumstances of the whole activity." *Id.* at 1470 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S. Ct. 1473 (1947)).

**Federal Independent Contractor Analysis**

46.   The determining factor as to whether Plaintiffs and those similarly situated are employees or independent contractors under FLSA is not the workers' election, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for himself and truly independent or, rather, is economically dependent upon finding employment in others.

47.   Under the applicable test, courts utilize the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determined by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

48.   The totality of circumstances surrounding the employment relationship between Defendants and its Laborers establishes economic dependence by the Laborers on Defendants and employee status.  Here, Plaintiffs and all other Laborers are not in business for themselves and truly independent, but rather are economically dependent upon finding employment with

Defendants.  The Class members are not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the Class members are the basis for Defendants' business. Defendants obtain the customers who seek out construction services, and Defendants provide the Laborers with work by assigning them to complete tasks for Defendants' customers.

**A.    Control Exercised by Defendants**

49.    Defendants all retain pervasive control over the business operations as a whole, and all of the Laborers work activities.

50.    An email e-mail dated 3/29/18 from Samantha Simms, an employee of ATCC, to the Laborers on the Twin Falls project, provides a telling illustration of the control Defendants jointly exercised over Plaintiffs work activities.  In that email, Miss Simms wrote:

Even though Alpha Team sees it as two teams, BG Construction sees everyone as ONE TEAM: ALPHA TEAM, so please, do not work separate from each other. We are all one team, we all have the same goal out of this. Our goal is to make money. However, Hector will send you guys home if he sees that you guys are standing around looking lost. STAY BUSY. Do not leave the freezers, I know it's very cold. I understand that, but you guys came to work and cannot be leaving the freezers a lot. The client is paying for you guys to work hard if you guys stand around or leave a lot they will  notice and let me know that they're letting you go. In that moment I cannot fight or help you because Hector is seeing it with his own eyes.  Be wise! All you guys are away from your homes far away and you came to work. Let's get some work! Let's make this money! Please keep your breaks to a minimum. There is always something to do, there is always work to do.

*See Exhibit F*, a true and correct copy of Simms Email Correspondence.

51.    In that email, Ms. Simms also individually instructed Plaintiff Webb that "if you see any team mates – either from Team Alpha/Beta standing around please keep them busy before Hector's hounds or Hector himself sees it." *Exhibit F*.

52.    Additionally, Miss Simms explained to the Laborers on the Twin Falls project that Plaintiff Webb would pass instructions on from Defendant Hector Beltran, and that the Laborers should "[f]ollow Hector's directions to the T."  Specifically, the email from Ms. Simms stated:

Guys:

Follow Hector's directions to the T.

Take Steffan's tips in consideration since he normally gets his directions either directly from Hector or from me. Steffan has everyone's best interest in mind, yours, mines, Alpha Team's and BG Construction- our client.

Don't be rebellious! This isn't the time to be rebellious. Have a good attitude and stay positive. Even I am taking notes from all of this. Whomever doesn't work out from this job site won't be called back for others.  This is where you show what you're made of and how you work as a team. If you let it, Alpha  Team can be your family.

***Exhibit F***.

53.    On September 12, 2017, Ms. Simms e-mailed the Laborers on the Las Vegas project (at Bed, Bath, & Beyond) and reminded them that "[y]ou work for Alpha Team Construction, but please, always be courteous, professional and respectful to everyone." ***Exhibit F***.

54.    The email correspondence attached as ***Exhibit F*** and cited herein illustrates that each of the Defendants exercised complete control over the activities of the Laborers.

55.    The Employment Contract the Laborers were required to sign also states that "Employee shall comply with the Employer policies, procedures, rules and regulations, both written and oral, as are announced by the Employer from time to time." ***Exhibit D***, ¶ 1.

56.    Furthermore, the Employment Contract states that the Laborers "assignment, duties and responsibilities, and reporting arrangements may be changed by the Employer in its sole discretion without causing termination of this agreement." ***Exhibit D***, ¶ 1.

**B.    The Relative Investments of the Employer and Employee**

57.    Plaintiffs and the Laborers have no investment, other than their time, in the projects they work on.  The business is secured by Defendants – Plaintiffs and the other Laborers merely show up to the job-site and follow the instructions they are given.

58.    Plaintiffs and the Laborers are not expected to use their own tools or equipment in carrying out the various projects they are assigned to by Defendants.  Instead, Defendants provide all the tools and equipment to complete the job.

**C.    Degree Employer Influences Profit or Loss**

59.    The ability for Laborers to earn a profit is almost exclusively in the hands of Defendants, as Laborers work full-time for Defendants, and depend on Defendants to find the projects they are assigned.

60.    Plaintiffs and the other Laborers' opportunity to make a profit was also dictated by Defendants because the "assignment, duties and responsibilities, and reporting arrangements may be changed by the Employer in its sole discretion." ***Exhibit D***, ¶ 1.

61.    Defendant has the ability to restrict or revoke Laborers' access to work at any time, as evidenced by Ms. Simm's statements that a Laborer may be sent home if it appears to Defendant Hector Beltran ("or his hounds") that the Laborer isn't working hard enough. ***Exhibit F***.

62.    Plaintiffs and the other Laborers have no opportunity to incur loss in any real sense.

**D.    Skill and Initiative Required for the Job**

63.    Plaintiffs and the putative class of Laborers are unskilled laborers, with no specialized knowledge.  Furthermore, Defendant required them to have no specialized skills or training.

64.    At the time Plaintiff Webb was hired by Defendants, Ms. Simms sent him an email requesting him to recruit his friends, regardless of their experiences, to work as Laborers. On September 12, 2017, she wrote: "[a]sk your friends if they can each bring one or two more

guys.  I am really struggling to fill these positions." ***Exhibit F***.

   **E.    The Permanency of the Relationship**

   65.    Defendants explained to the Plaintiffs and other similarly situated Laborers that additional work would be provided, if they met Defendants' expectations and fulfilled their job duties.  For example, Ms. Simms explained "[w]homever doesn't work out from this job site won't be called back for others.  This is where you show what you're made of and how you work as a team.  If you let it, Alpha Team can be your family."

   66.    At all relevant times, the expectation of the Laborers was that the relationship would be perpetual.

   **F.    Agents' Duties Were Integral to Defendant's Business**

   67.    According to Defendant ATCC's website, they "supply crew management and contracted labor construction sites and more.  Defendant BGCS and Defendant Beltran are in the construction business.  Together, Defendants rely on Laborers as an integral part of their construction business.

   **COMMON ENTERPRISE AND JOINT EMPLOYER ALLEGATIONS**

   68.    Defendants ATCC, BGCS, and Hector Beltran were joint employers of the Plaintiffs and all similarly situated Laborers.

   69.    Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).

   70.    The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.,* 603 F.2d 748, 754 (9th Cir. 1979).

   71.    Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3, 65 S. Ct. 295

1    (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan*

2    *Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 n. 21, 105 S. Ct. 1953 (1985) (same).

3        72.   The determination of whether an employer-employee relationship exists does not

4    depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford*

5    *Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473, 1477 (1947). The touchstone is

6    "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33, 81 S. Ct.

7    933, (1961).

8        73.   Two or more employers may jointly employ someone for purposes of the

9    FLSA. *Falk v. Brennan,* 414 U.S. 190, 195, 94 S. Ct. 427, 431 (1973).

10       74.   All joint employers are individually responsible for compliance with the FLSA.

11   29 C.F.R. § 791.2(a) (1981).

12       75.   Regulations issued by the Department of Labor give the following examples of

13   joint employment situations:

14   >   (2) Where one employer is acting directly or indirectly in the interest of
>   the other employer (or employers) in relation to the employee; or

15

16   >   (3) Where the employers are not completely disassociated with respect to
>   the      employment of a particular employee and may be deemed to share
>   control of the employee, directly or indirectly, by reason of the fact that
>   one employer controls, is controlled by, or is under common control with
>   the other employer.

17

18

19   29 C.F.R. § 791.2(b) (footnotes omitted).

20       76.   The ultimate question of whether a party is an "employer" is a legal issue.

21   *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983).  The

22   ultimate determination must be based "upon the circumstances of the whole activity." *Id.* at 1470

23   (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S. Ct. 1473, 1477(1947)).

24       77.   Defendants have an agreement in place to share and mutually benefit from the

25   services rendered by Plaintiffs and all other similarly situated Laborers.

26       78.   All Defendants earn revenue and profits from the services performed by Laborers

27   and other similarly situated Laborers.

28

79.    All Defendants provide supervision, management, control, and direction to the Plaintiffs and all other similarly situated Laborers.

80.    The entire business arrangement between Defendants hinges on the services performed by Laborers. Defendants jointly implement common policies, practices, disciplinary measures, and training for all Laborers.

81.    Defendants were collectively engaged in a common enterprise.

82.    Defendant ATCC entered into written agreements with the Laborers regarding, *inter alia*, their compensation, job duties, and job expectations.

83.    Defendant ATCC provided Laborers to Defendant BG Construction and Defendant Hector Beltran, and each Defendant exercised control of the Laborers day to day work activities, including when they were permitted to take breaks.

84.    Plausibly, Defendants BGCS and Hector Beltran's exercise of control, input, and responsibility over the training, structure and conditions of employment for the Laborers meets the test for joint employer.  *See Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 967 (N.D. Cal. 2017) (finding multiple companies and individual defendants were joint employers of sales and marketing workers).

85.    Defendants provided all the necessary tools, equipment and materials used by the Laborers and by doing so, plausibly, meet the test for joint employer.

86.    Plausibly, by Defendant BGCS and Hector Beltran originating and supplying projects for the Laborers, they meet the test for joint employer.

87.    Plausibly, by Defendants BGCS, Hector Beltran, and ATCC retaining the right to terminate the Laborers as they saw fit, they meet the test for joint employer.

*88.*    The fact that some Defendants may not have exercised each and every aspect of the test for employer under the law, and may have delegated some of the responsibilities to others, does not alter their status as employer; it merely makes them joint employers. *Bonnette, supra,* at 1470.

89.     Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint. *Falk, supra;* 29 C.F.R. § 791.2(a).

90.     The above well-pleaded facts all support Plaintiffs standing to sue each and every Defendant named herein as a joint employer and seek damages for the alleged violations under a joint employment theory. *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 966 (N.D. Cal. 2017); *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 940 (N.D. Cal. 2016).

## **COLLECTIVE ACTION ALLEGATIONS**

91.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly laborers who worked for any of the Defendants at any time after July 9, 2015.*

(hereinafter referred to as the "Collective").  Plaintiffs reserve the right to amend this definition as necessary.

92.     Excluded from the proposed Collective are Defendants' executives, administrative, and professional employees, including computer professionals and outside sales persons.

93.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).  The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

94.     The employment relationships between Defendants and every Collective member is the same and differ only by name, location, and rate of pay. The key issues – whether Defendant misclassified Laborers as independent contractors and failed to properly pay them overtime and minimum wages under the FLSA – do not vary substantially among the Collective members.

95.     Plaintiffs estimate the Collective, including both current and former employees over the relevant period, will include several hundred members. The precise number of Collective members should be readily available from a review of Defendants' personnel and payroll records.

## **RULE 23 NEVADA CLASS ACTION ALLEGATIONS**

96.     Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly laborers who worked for any of the Defendants at any time after July 9, 2016.*

(hereinafter referred to as the "Rule 23 Nevada Class").  Plaintiffs reserve the right to amend this definition as necessary.

97.     The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical. Plaintiffs reasonably estimate that there are hundreds of Rule 23 Nevada Class members. Rule 23 Nevada Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

98.     There is a well-defined community of interest among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class.  These common legal and factual questions, include, but are not limited to, the following:

> a.     Whether Defendants misclassified Plaintiffs and all other similarly situated Laborers as independent contractors;
>
> b.     Whether Rule 23 Nevada Class members are owed overtime (above the federally mandated overtime wages due under the FLSA) for time spent working for Defendants, and if so, the appropriate amount thereof; and
>
> c.     Whether Rule 23 Nevada Class members are owed minimum wages (above the federally mandated minimum wages due under the FLSA) for time spent working for Defendants, and if so, the appropriate amount.

99.     Plaintiffs' claims are typical of those of the Rule 23 Nevada Class in that they and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same policies, practices, promises, classification, and course of conduct as all other Rule 23 Nevada Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

100.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nevada Class and they have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

101.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

102.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

103.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

104.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

1

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

2      105.    Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their

3   own behalf and on behalf of:

4          *All current and former hourly laborers who worked for Defendants at any time*
           *after July 9, 2015.*
5

6   (hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend

7   this definition as necessary.

8      106.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all

9   Rule 23 Nationwide Class members in this case would be impractical.  Plaintiffs reasonably

10  estimate there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class

11  members should be easy to identify from Defendants' computer systems and electronic payroll

12  and personnel records.

13     107.    There is a well-defined community of interest among Rule 23 Nationwide

14  members and common questions of law and fact predominate in this action over any questions

15  affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual

16  questions, include, but are not limited to, the following:

17          a.    Whether the Rule 23 Nationwide Class members were misclassified by
                  Defendants as independent contractors; and
18
            b.    Whether Defendants' non-payment of wages for all compensable time
19                amounts to a breach of contract.

20     108.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they

21  and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate

22  result of the Defendants' common and systemic payroll policies and practices.  Plaintiffs' claims

23  arise from the same pay policies, practices, classification, promises and course of conduct as all

24  other Rule 23 Nationwide Class members' claims and her legal theories are based on the same

25  legal theories as all other Rule 23 Nationwide Class members.

26     109.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide

27  Class and have retained counsel who are qualified and experienced in the prosecution of

28

nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

110.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.  Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

111.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

112.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

113.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, et seq. -- FAILURE TO PAY OVERTIME**

114.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

115.    At all times relevant to this action, Defendants were employers under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

116.    Defendants are engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

117.    At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

118.    Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

119.    Defendants each have had, and continue to have, an annual gross business volume in excess of $500,000.00.

120.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

121.    At all times relevant to this action, Defendant misclassified Plaintiffs and all similarly situated current and former Class members as independent contractors and failed to pay them overtime wages as required by 29 U.S.C. §207 of the FLSA.

122.    In workweeks where Plaintiffs and other Class members worked 40 hours or more, Plaintiffs and the other Class members should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage.  29 U.S.C. § 207.

123.    Defendants' violations of the FLSA were knowing and willful. Defendant knew or could have easily known that Plaintiffs and the other Class member were non-exempt employees, not independent contracts, and Defendants could have properly compensated Plaintiffs and the Class for the preliminary work they performed, but did not.

124.    Defendants also could have tracked the number of hours Plaintiffs and the Class members worked for purposes of calculating their overtime pay, but did not.

125.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus

1  an additional equal amount in liquidated damages (double damages), plus costs and reasonable

2  attorneys' fees.

**COUNT II**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, et seq. -- FAILURE TO PAY MINIMUM WAGES**

126.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

127.    At all relevant times herein, Plaintiffs and the FLSA Collective were entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, et seq.

128.    The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a).

129.    Defendants are subject to the FLSA's minimum wage requirements because they are an enterprise engaged in interstate commerce, and their employees are engaged in commerce.

130.    Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees must be compensated at a rate of at least $7.25 per hour.  This has been the case since July 24, 2009.

131.    Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiffs and the other Class members of the FLSA collective.

132.    As alleged herein, Plaintiffs and the Class members were employees of Defendant and entitled to the FLSA minimum wage.

133.    Defendants failed to pay Plaintiffs and the Class members the federally mandated minimum wage rate in workweeks that their commissions did not cover Defendants' minimum wage obligations.  In such weeks, Defendants failed to provide additional compensation to meet the FLSA's minimum wage requirements.

134.    Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have tracked the hours worked by Laborers, properly classified Laborers as employees,

and paid them minimum wages as required by the FLSA, but it did not.

135.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, each employee is entitled to his or her unpaid wages, plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT III**
**(Rule 23 Nevada Class Action)**
**VIOLATION OF THE MINIMUM WAGE AMENDMENT -- FAILURE TO PAY MINIMUM WAGES**

136.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

137.    All members of the Rule 23 Nevada Class are entitled to a minimum wage pursuant to the Minimum Wage Amendment. Nev. Const. art. XV, § 16.

138.    Defendants, Plaintiffs and the Rule 23 Nevada Class members are "employers" and "employees" for the purposes of the Minimum Wage Amendment.

139.    The Minimum Wage Amendment guarantees to each Nevada employee, with very few exceptions, a particular hourly wage: "Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits." Nev. Const. art. XV, § 16(A).

140.    The Amendment contains an index/increase mechanism, such that since July 1, 2010, the Nevada minimum wage is $7.25 per hour if the employer offers health benefits, or $8.25 per hour if the employer does not offer health benefits. *See* Nev. Const. art. XV, § 16(A).

141.    By failing to pay Plaintiffs and members of the Rule 23 Nevada Class the minimum wage established, Defendants violated the Minimum Wage Amendment.

142.    Defendant violated the Minimum Wage Amendment by regularly and repeatedly failing to compensate Plaintiffs and the Rule 23 Nevada Class for the time spent performing services for Defendants, as described in this Complaint. As a result, Plaintiffs and the Rule 23 Nevada Class have and will continue to suffer loss of income and other damages. Accordingly,

Plaintiffs and the Rule 23 Nevada Class are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under the Minimum Wage Amendment.

**COUNT IV**
**(Rule 23 Nevada Class Action)**
**VIOLATIONS OF N.R.S. §§ 608.016, 608.018, and 608.050 -- FAILURE TO PAY WAGES, AND FAILURE TO PAY OVERTIME UNDER NEVADA LAW**

143. Plaintiffs re-allege and incorporate all previous paragraphs herein.

144. All members of the Rule 23 Nevada Class are entitled to their regular wages and/or overtime pursuant to Nevada's wage and hour laws, N.R.S. §§ 608.016 and 608.018.

145. Defendants, Plaintiffs and the Rule 23 Nevada Class members are "employers" and "employees" for the purposes of Nevada's wage and hour laws, N.R.S. §§ 608.016 and 608.018.

146. N.R.S. § 608.016 states that an "employer shall pay to the employee wages for each hour the employee works."

147. By failing to pay Plaintiffs and the Rule 23 Nevada Class for each hour worked, Defendants violated N.R.S. § 608.016.

148. N.R.S. § 608.018 states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or eight (8) hours per day assuming the employee earns less than 1.5 times the Nevada minimum wages.

149. By failing to pay Plaintiffs and the Rule 23 Nevada Class for overtime as proscribed by N.R.S. § 608.018 for hours worked in excess of forty (40) hours per week or eight (8) hours per day, Defendants violated N.R.S. § 608.018.

150. N.R.S. § 608.050 provides "[w]henever an employer of labor shall discharge or lay off employees without first paying them the amount of wages or salary then due to them … each of the employees may charge and collect wages in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full."

151.    Defendants violated N.R.S. § 608.050 by failing to pay Plaintiffs all wages owed at the time they were discharged.

152.    Defendants' actions discussed above were willfully oppressive, fraudulent and malicious, entitling Plaintiff and the Rule 23 Nevada Class to punitive damages.

153.    Defendant violated Nevada law, including N.R.S. §§ 608.016 and 608.018 by regularly and repeatedly failing to compensate Plaintiffs and the Rule 23 Nevada Class for the time spent performing services for Defendants, as described in this Complaint. As a result, Plaintiffs and the Rule 23 Nevada Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiffs and the Rule 23 Nevada Class are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under N.R.S. §§ 608.005 *et seq.*

**COUNT V**
**(Rule 23 Nevada Class Action)**
**VIOLATIONS OF N.R.S. §§ 608.019 and 608.115 -- TO PROVIDE REST BREAKS AND FAILURE TO MAINTAIN RECORDS**

154.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

155.    N.R.S. § 608.019 provides "[e]very employer shall authorize and permit all his or her employees to take rest periods, which, insofar as practicable shall be in the middle of each work period. The duration of the rest periods shall be based on the total hours worked daily at the rate of 10 minutes for each 4 hours or major fraction thereof."

156.    Defendant violated § 608.019 by failing to provide Plaintiffs and other Laborers with rest breaks.

157.    Additionally, N.R.S. § 608.115 requires that "[e]very employer shall establish and maintain records of wages for the benefit of his or her employees, showing for each pay period the following information for each employee…" gross wage or salary other compensation of in the form of services or food, housing or clothing; deductions; net cash wage or salary; total hours employed in the pay period by noting the number of hours per day; and date of payment.

158.    Defendants failed to maintain records for Plaintiffs and the Rule 23 Nevada Class, as required by N.R.S. § 608.115.

159.    Defendants' actions discussed above were willfully oppressive, fraudulent and malicious, entitling Plaintiff and the Rule 23 Nevada Class to punitive damages.

160.    As a result, Plaintiffs and the Rule 23 Nevada Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiffs and the Rule 23 Nevada Class are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under N.R.S. §§ 608.005 *et seq.*

**Count VI**
**(Rule 23 Nationwide Class Action)**
**BREACH OF CONTRACT**

161.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

162.    At all times relevant to this action, Defendants had contracts with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

163.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of its regular business activities.

164.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift, including the unpaid off-the-clock work that was required of them, that they performed, and that was accepted by Defendants, in connection with the pre-shift work activities described herein.

165.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the worked activities performed prior to clocking in for each shift, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

166.    This claim is appropriate to the extent Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA or Nevada law are inadequate in that Defendant paid them more than the applicable minimum wage but less than 40 hours per week (i.e., pure "gap time" claims).

167.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent performing preliminary work, which is a fundamental part of an "employer's job."

168.    As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged, in an amount to be determined at trial.

169.    These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, Quinton Drummer, Steffan Webb, and Demontray Stallworth, request an entry of an Order the following relief:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I and II);

b.    Certifying this action as a class action (for the Rule 23 Nevada Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Count III, IV, and V);

c.    Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count VI);

d.    Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiffs to send notice of

this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.    Designating Plaintiffs as the representatives of the FLSA collective action Class, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class and undersigned counsel as Class counsel for the same;

f.    Declaring Defendants willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.    Declaring Defendants violated the Minimum Wage Amendment;

h.    Declaring Defendants violated N.R.S. §§ 608.016, 608.018, 608.019, 608.050, and 608.115, and that said violations were intentional, willfully oppressive, fraudulent and malicious;

i.    Declaring Defendants breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

j.    Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the collective action Class, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class, the full amount of damages and liquidated damages available by law;

k.    Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l.    Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m.    Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, Quinton Drummer, Steffan Webb, and Demontray Stallworth, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes

made and provided with respect to the above entitled cause.

DATED this 9th day of July, 2018

**WOLF, RIFKIN, SHAPIRO,**
**SCHULMAN & RABKIN, LLP**

By:    */s/ Don Springmeyer*
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
Daniel Bravo
Nevada Bar No. 13078
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
dbravo@wrslawyers.com

Kevin J. Stoops *(Pro hac vice to be submitted)*
Charles R. Ash, IV *(Pro hac vice to be submitted)*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
crash@sommerspc.com

COLLECTIVE AND CLASS ACTION COMPLAINT